**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) Case No.: 1:12-cv-1946-AWI-BAM |
| Plaintiff, | )<br>) **FINDINGS AND RECOMMENDATIONS ON** |
| v. | ) **DEFENDANTS' MOTIONS TO SET ASIDE**<br>) **DEFAULT** |
| LOUIS JAVIER QUINTANA ALVAREZ,<br>and JOSE ERNESTO ZELAYA, individually<br>and d/b/a LA HUACAN RESTAURANT<br>AND NIGHT CLUB, | )<br>) (Docs. 13, 18)<br>)<br>) |
| Defendants. | ) |

**INTRODUCTION**

On March 11, 2013 and March 20, 2013 Defendants Louis Javier Quintana and Jose Ernesto Zelaya ("Defendants"), filed Motions to Set Aside Default. (Docs. 13, 18). The motions were referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for April 19, 2013. For the following reasons, Defendants' motions to set aside entry of default (Docs. 13, 18) should be **GRANTED.**

1

**BACKGROUND**

On November 30, 2012, Plaintiff J&J Sports Production, Inc. ("Plaintiff") filed its complaint against Defendants, alleging violations of 47 U.S.C. § 605, *et seq.*, and 47 U.S.C. § 553, *et seq.*, as well as claims under California state law. Plaintiff claims that it was the exclusive commercial distributor of the program "*Good v. Evil: Miguel Angel Cotto v. Antonio Margarito, WBA Super World Light Middleweight Championship Fight Program*" (the "Program"). Plaintiff claims that Defendants unlawfully intercepted and broadcast the telecast of the Program on December 3, 2011 at La Huacan restaurant and Night Club (the "restaurant"). According to the complaint, Plaintiff was the exclusive commercial distributor of closed-circuit rights to the Program. Since Defendants operate the restaurant, a commercial establishment, and exhibited the Program there, Defendants could not have lawfully obtained the Program without contracting with Plaintiff. Defendants did not contract with Plaintiff, and thus must have wrongfully intercepted, received, and broadcasted the Program.

On January 30, 2013, Plaintiff filed proofs of service indicating that Louis Quintana was served on January 11, 2013 by substitute service on Dulce Gutierrez, at La Huacan restaurant and Night Club located at 101 East Glenn Avenue, Suite A, Modesto, CA 95358. Jose Ernesto Zelaya was served on January 11, 2013, by substituted service on Dulce Gutierrez at the same address. The process server also mailed the documents to Defendants at the restaurant's business address. According to the declaration of diligence, the process server attempted service at the business address three times prior to substitute service. (Docs. 6, 7).

Defendants failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure. On February 27, 2013, pursuant to Plaintiff's request, the Clerk of the Court entered default against Defendants. Plaintiff did not file a motion for default judgment and on March 11, 2013 and March 20, 2013, Defendants moved to set aside the Clerk's entry of default. On April 8, 2013, Plaintiff requested leave to file a late opposition to Defendants' motions to set aside, which the Court granted on April 9, 2013. (Doc. 21). Defendants replied to Plaintiff's opposition on April 10, 2013. (Doc. 22).

**LEGAL STANDARD**

The Federal Rules of Civil Procedure govern the entry of default.  Once default has been entered by the clerk, "[t]he court may set aside an entry of default for good cause."  FED. R. CIV. P. 55(c).  In evaluating whether good cause exists, the court may consider "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  The standard for good cause "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

On the other hand, when the moving party seeks timely relief from default "and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986).  Moreover, the Ninth Circuit has opined "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

**ANALYSIS**

The Court will consider each of the good cause factors in turn below.

**1.      Culpable Conduct**

With respect to the first good cause factor, the Court concludes that Defendants have shown that they did not engage in culpable conduct.  The Ninth Circuit has held that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Group Life Ins. Plan*, 244 F.3d at 697.  The concept of "intentionally" in this context refers to conduct that is willful, deliberate, or that evidences bad faith. *Id.*  "Neglectful failure to answer as to which the defendant offers a credible good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate

the legal process is not 'intentional'... and is therefore not necessarily—although it certainly may be, once the equitable factors are considered—culpable or inexcusable." *Id.* at 697-98.

Here, Defendants argue that their conduct was not culpable. Defendant Alvarez explains in his Declaration that he did not file an answer to the complaint for numerous reasons. First, Defendant Alvarez argues he did not understand that he needed to file any papers with the Court or do anything else before the scheduling conference set for March 12, 2013. Declaration of Louis Javier Quintana Alvarez. ("Alvarez Decl."), ¶ 2, Doc. 13. His understanding was that he needed to appear at the scheduling conference to respond to the lawsuit. Alvarez Decl., ¶ 2. Compounding his lack of understanding for a need to file a formal answer, was his unfamiliarity with the legal system and the fact that English is his second language. Alvarez Decl., ¶ 2.

Similarly, Defendant Jose Zelaya reveals that he did not find out about the lawsuit until March 14, 2013. Declaration of Jose Ernesto Zelaya. ("Zelaya Decl."), ¶ 2, Doc 18. He states that although the documents were served by substituted service, no one at La Huacan Restaurant and Night Club shared the summons and complaint with him. Defendant Zelaya also states that he was visiting Mexico from approximately the beginning of March until just a few days before this motion was filed. Zelaya Decl., ¶ 2.

Defendants have put forth a credible, good faith explanation for their failure to answer. Defendant Alvarez claims he misunderstood his need to file documents with the Court prior to appearing in person. Further, given the substituted service on Defendant Zelaya and his travel outside of the country, he was not aware this lawsuit had been instigated against him until after default had been entered. Even if Defendants' actions rise to the level of neglect, there is no compelling evidence that Defendants' failure to answer was the result of bad faith or an attempt to take advantage of the opposing party or game the system. Consequently, the actions of Defendants Alvarez and Zelaya do not rise to the level of culpability. *TCI Group Life Ins. Plan*, 244 F.3d at 697.

## 2. Meritorious Defense

A defendant seeking to set aside default must allege sufficient facts that, if true, would constitute a defense. *Id.* at 700. However, this burden is not "extraordinarily heavy," as a movant

4

need only demonstrate law or facts showing that a sufficient defense is assertable.  *Id*.  The question of whether the factual allegations are true is not at issue at this juncture.  *Mesle*, 615 F.3d at 1094.

Collectively, Defendants argue that they did not willfully or intentionally intercept and steal a television signal.  Both were not personally present at the restaurant when the Program was displayed and neither gained any financial benefit that could be attributed to exhibition of the Program.  Alvarez Decl., ¶ 5; Zelaya Decl., ¶ 5.

Specifically, Defendant Alvarez contend that at all times, he maintained what he believed was a legitimate and lawful television service.  Defendant Alvarez further contends that at the time of the alleged incident he was not personally present at La Huacan Restaurant and Night Club.  Alvarez Decl., ¶ 5.  There was another manager on duty that was responsible for the operations of the business and day-to-day activities on that date.  Alvarez Decl., ¶ 5.  He claims he never authorized the display of the Program at the restaurant, and the restaurant did not receive any financial benefit.  Defendant Zelaya states that approximately two years ago, he sold his ownership interest in the restaurant.  Although his name still appears on the liquor license, he does not operate the business or receive any share of the profits.  Zelaya Decl., ¶ 5.  Given his lack of affiliation with the restaurant, Defendant Zelaya argues he certainly did not intercept or steal a TV signal or authorize for any TV signal to be intercepted.  Zelaya Decl., ¶ 5.

In the opposition, Plaintiff contends that 47 U.S.C. §§ 605 and 553 are strict liability statutes, and that Defendants' defenses, at most, go to damages.  However, the Eastern District has held that when a Plaintiff alleges violations of both the Communications Act and the Cable & Television Consumer Protection Act, Defendants have a meritorious defense because the allegations are contradictory.  *See J & J Sports Prods. v. Prado*, 2008 U.S. Dist. LEXIS 29519, at * 7 (E.D. Cal. Mar. 27, 2008).  The Court explained:

> Plaintiff's first claim is for violation of § 605 of the Communications Act. Section 605 prohibits unauthorized interception of any radio communication.  The term 'radio' includes satellite transmissions. Plaintiff's second claim is for violation of § 553 of the Cable & Television Consumer Protection Act.  Section 552 applies to any communications service offered over a cable system. Since § 605 covers satellite communications and § 553 covers cable, guilt under one statute is a defense to the other.

*Id.* at \*7-8 (internal quotations and citations omitted). Therefore, because Defendants can only be liable under one statute, Defendants have satisfied the requirement of a meritorious defense. *Id.* The conclusion followed by this Court has been shared by several other district courts. *See e.g. J & J Sports Prods. v. Flores*, 2011 U.S. Dist. LEXIS 79647, \*8 (E.D. Cal. July 21, 2011); *Joe Hand Promotions, Inc. v. Kaczmar*, 2008 U.S. Dist. LEXIS 88199 (N.D. Ill. Oct. 29, 2008); *Joe Hand Promotions, Inc. v. Chapa*, 2009 U.S. Dist. LEXIS 64004 (S.D. Tex. July 22, 2009).

Moreover, Defendants raise additional meritorious defenses. With respect to Defendant Zelaya, he argues that his only connection to the restaurant is his name on the liquor license. The Court examined a similar issue in *Joe Hand Promotions, Inc. v. Alvarado*, 2011 U.S. Dist. LEXIS 47662 (E.D. Cal. May 3, 2011). In *Alvarado*, Plaintiff sued the former bar owner and those who owned the bar at the operative time, based upon the rationale that the current owner was operating under the former owner's liquor license at the time the pirated program was displayed. In rejecting this rationale as a basis for imposing liability, the Court held,

> Individual liability under the Cable Act requires that the individual authorize the underlying violations. *J&J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D. N.Y. 2009). Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct. *291 Bar & Lounge*, 648 F. Supp. 2d at 473 (quoting *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir.1997)).

*Id.* at \*18-19. The Court concluded, "The Alvarados' names appearing on the liquor license is insufficient to subject them to liability under Joe Hand's federal communications claims." *Id.* at \*20. Here, just as in *Alvarado*, Defendant Zelaya has presented facts that he was not the owner at the time the Program was broadcast. Thus, he has presented facts that "would constitute a defense." *See TCI Group*, 244 F.3d at 700. Further, both Defendants argue the defense that they were not connected to the broadcast of the Program in that they were both not present when the Program was broadcast. Defendants' statements are sufficient to present the additional possibility of a meritorious defense.

### 3. Prejudice to Plaintiff

The Court also must consider whether Plaintiff will suffer prejudice if the entry of default is set aside. *Id.* at 696. "To be prejudicial, the setting aside of a judgment must result in greater harm than

simply delaying resolution of the case." *Id.* at 701.  The relevant inquiry is "whether [the plaintiff's] ability to pursue is claim will be hindered. *Falk*, 739 F.2d at 463.  A delay "must result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion" for the setting aside of default to be prejudicial to the plaintiff.  *TCI Group*, 244 F.3d at 701 (citing *Thompson v. American Home Assur.* Co., 95 F.3d 429, 433-34 (6th Cir. 1996)).

Defendants assert that Plaintiff has suffered no credible harm due to the short delay that may have been caused by Defendants' failure to formally respond to the complaint and summons in a more timely fashion.  Plaintiff responds that "there is prejudice to Plaintiff as there is greater opportunity for fraud or collusion." (Doc. 22 at 10).  According to Plaintiff, Defendant Zelaya contends that because he sold his ownership interest, if there is any liability, it lies with Defendant Alvarez.  Plaintiff argues that this relationship causes a "greater opportunity for fraud and collusion," as Defendants are working together against Plaintiff.  (Doc. 20-3).

Plaintiff merely speculates that Defendants will use their shared representation to defraud or collude against Plaintiff.   Plaintiff has not presented facts to support the assertion that the Defendants are likely to engage in fraudulent or collusive activity beyond shared counsel.  Likewise, there are no facts indicating Plaintiff's ability to pursue their claim against either Defendant will be hindered.  Therefore, Plaintiff would not be prejudiced if the entry of default is set aside by the Court.

### 4.    Timeliness

Finally, while not a specific factor Courts must analyze when determining good cause under Federal Rule of Civil Procedure 55(c), Defendants argue that the Court should consider the timely nature of their motions to set aside.  According to Defendants, the Court should look favorably on their motions because they were filed within weeks of the February 27, 2013, entry of default.  Further, Defendants argue they "did not receive the lawsuit papers in this matter directly" further adding to their delay in responding.  (Docs. 13 at 16; Doc.18 at 24).

Specifically, Defendant Alvarez contends that he did not find out about the summons and complaint until a few days after service.  After reviewing the summons and complaint, Defendant Alvarez was under the impression that he needed to appear in Court for the March 12, 2013 scheduling conference.  Alvarez Decl., ¶ 2-4.  Defendant Alvarez was prepared to appear before the Court and

defend this lawsuit until he learned that default had been entered.  Immediately after discovering the clerk's entry of default, Alvarez drove over 450 miles from Modesto, California to Chula Vista, California to meet with current counsel on March 7, 2013.  Alvarez Decl., ¶ 3.  On that same date, Counsel attempted to obtain a stipulation to set aside the clerk's default, but after acknowledging receipt of the correspondence, Plaintiff's counsel did not respond to the request.   (Doc. 13).  Declaration of Matthew A. Paré, ¶ 2.  Defendant Alvarez's motion to set aside default was filed on March 11, 2013.  (Doc. 13).

Similarly, Defendant Jose Ernesto Zelaya acknowledges that he was served by substituted service in January 2013, but contends that he never received any of the documents and that he was not informed of the action until March 14, 2013, after default was entered.  Zelaya Decl., ¶ 3.  Defendant Zelaya left the country to visit Mexico beginning in March 2013 and he did not return until days before his declaration was filed.  Zelaya Decl., ¶ 2.  Compounding matters, Defendant Zelaya stated that he has never been involved in a lawsuit and his first language is Spanish and not English.  Zelaya Decl., ¶ 2. Defendant Zelaya's motion to set aside default was filed on March 20, 2013.  (Doc. 18).

Based on Defendants' statements, Defendants obtained counsel and filed this motion within weeks of learning that default had been entered.  The Court finds that Defendants brought their motions within a reasonable time of the entry of default.  To the extent that Plaintiff suggests that this time frame constitutes delay, the Court disagrees.

## FINDINGS AND RECOMMENDATIONS

The Court finds that the above factors weigh in favor of setting aside the Clerk's entry of default.  There is a general presumption to try cases on their merits, and the instant case does not warrant a departure from this presumption.  *See In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991).  Accordingly, Defendants' Motions to Set Aside Entry of Default should be **GRANTED**.

These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fifteen (15) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."   The district judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636 (b)(1)(c).   The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 19, 2013**                    /s/ *Barbara A. McAuliffe*
                                            UNITED STATES MAGISTRATE JUDGE

9