1

2

3

4

5

6

7        **IN THE UNITED STATES DISTRICT COURT FOR THE**

8          **EASTERN DISTRICT OF CALIFORNIA**

9

10   J & J SPORTS PRODUCTIONS, INC.,          1:12-cv-01946-AWI-BAM

11                  Plaintiff,               **ORDER RE: MOTION TO**
                                             **DISMISS COMPLAINT**
12            v.
                                             (Doc. 36)
13   LOUIS JAVIER QUINTANA ALVAREZ
     and JOSE ERNESTO ZELAYA,
14   individually and d/b/a LA HUACAN
     RESTAURANT AND NIGHT CLUB,
15
                  Defendants.
16   _____/

17

18                      **I. INTRODUCTION**

19   Defendants Louis Javier Quintana Alvarez and Jose Ernesto Zelaya have filed a motion for

20   judgment on the pleadings in response to the complaint of J & J Sports Productions, Inc., ("J &

21   J") pursuant to Federal Rules of Civil Procedure 12(c).  For reasons discussed below, the motion

22   is DENIED.

23

24              **II. FACTS AND PROCEDURAL BACKGROUND**

25

26                           1

The Court refers the parties to previous orders for a complete chronology of the proceedings.   On November 30, 2012, plaintiff J & J Sports Productions, Inc., (hereinafter referred to as "Plaintiff") filed its complaint against defendant Louis Javier Quintana Alvarez and Jose Ernesto Zelaya, ("Defendants") for violations of the Communications Act of 1943, 47 U.S.C. § 605, *et seq*, the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, *et seq*, California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*, and common law.

In the complaint, Plaintiff alleges as follows:

"… on December 3, 2011 (the night of the *Program* at issue herein…), [Defendants] had the obligation to supervise the activities of La Huacan Restaurant and Night Club, which included the unlawful interception of Plaintiff's *Program*,[i] and, among other responsibilities, had the obligation to ensure that the liquor license was not used in violation of the law."

Plaintiff further alleges:

"… on December 3, 2011… Defendants Louis Javier Quintana Alvarez and Jose Ernesto Zelaya, specifically directed the employees of La Huacan Restaurant and Night Club to unlawfully intercept and broadcast Plaintiff's *Program* at La Huacan Restaurant and Night Club or [sic] that the actions of the employees of La Huacan Restaurant and Night Club are directly imputable to Defendants Louis Javier Quintana Alvarez and Jose Ernesto Zelaya by virtue of their acknowledged responsibility for the actions of La Huacan Restaurant and Night Club."

Plaintiff further alleges:

"… the unlawful broadcast of Plaintiff's *Program*, as supervised and/or authorized by Defendants Louis Javier Quintana Alvarez and Jose Ernesto Zelaya, resulted in increased profits for La Huacan Restaurant and Night Club."

On August 12, 2013, Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).   On August 26, 2013, Plaintiff filed its opposition to Defendant's motion for judgment on the pleadings.   Defendants filed their reply to Plaintiff's opposition on August 29, 2013.

2

1

2

3                                    **III. LEGAL STANDARD**

4   Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed, but early enough

5   not to delay trial, a party may move for judgment on the pleadings."  Fed. R. Civ. Pro. 12(c).

6   Judgment on the pleadings is proper when the moving party establishes that on the face of the

7   pleadings there is no material issue of fact that remains to be resolved, and the moving party is

8   entitled to judgment as a matter of law.  *Beckway v. DeShong*, 717 F.Supp.2d 908, 913 (N.D.

9   Cal. 2010);  *Waldron v. Boeing Co.,* 388 F.3d 591, 593 (8th Cir. 2004).  The court must accept as

10  true all material allegations in the complaint, and must construe those allegations in a light most

11  favorable to the Plaintiff.  *Ambrose v. Coffee*, 696 F.Supp.2d 1119, 1129 (E.D. Cal. 2010);

12  *Larsen v. Trader Joe's Co*., 917 F.Supp.2d 1019, 1022 (N.D. Cal. 2013).  The pleadings must

13  show "beyond doubt" that the Plaintiff can prove no facts in support of the claim that would

14  entitle relief.  *Nickoloff v. Wolpoff & Abramson, L.L.P.,* 511 F.Supp.2d 1043, 1044 (C.D. Cal.

15  2007).

16          "Judgment on the pleadings is improper when the district court goes beyond the

17  pleadings to resolve an issue; such a proceeding must properly be treated as a motion for

18  summary judgment*." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542,

19  1550 (9th Cir. 1989); *see also* Fed. R. Civ. Pro. 12(c).  However, where subject matter

20  jurisdiction is challenged, the court may consider extrinsic materials, such as affidavits. *See*

21  *United States v. Vazquez,* 145 F.3d 74, 80 (2nd Cir. 1998); *Antares Aircraft, L.P. v. Federal*

22  *Republic of Nigeria,* 948 F.2d 90, 96 (2nd Cir. 1991), vacated on other grounds*,* 505 U.S. 1215,

23  112 (1992); *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2nd Cir.

24  1986). Although subject matter jurisdiction is normally challenged under Rule 12(b)(1), it may

25

26                                           3

also be raised on a motion pursuant to Rule 12(c). *See Formula One Motors, Ltd. v. United States,* 777 F.2d 822 (2nd Cir. 1985) (affirming dismissal of action for lack of subject matter jurisdiction on a Rule 12(c) motion).

Federal courts may hear only cases and controversies arising under the context given within Article III of the Constitution. U.S. Const., art. III § 2; *See also SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972). This is known as a case or controversy having justiciable character. The cases and controversies requirement is a dual limitation that ensures federal courts will not intrude into areas committed to other branches of government or the states. *Flast v. Cohen,* 392 U.S. 83, 94-95 (1968). A court must determine if a dispute is of justiciable character before it may decide the merits of a particular issue.

Standing is a federal doctrine built upon the idea there must be a separation of powers within the federal government. Standing is a further limitation on the powers of the judiciary, and without this limit, the authority of the judicial branch would be unchecked. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A dispute is not justiciable, and thus may not be before a federal court, if plaintiff lacks standing to sue. Schswarzer, et al., <u>Federal Civil Procedure Before Trial</u> 2E-2 (2013).

Article III provides the constitutional requirements for standing: 1) A concrete and particularized injury in fact, 2) Causation, and 3) Redressability. "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38 (1976); *NAACP., Western Region v. City of Richmond,* 743 F.2d 1346, 1352 (9th Cir. 1984). The injury must be "fairly traceable to the challenged action of the defendant." *Lujan,* 504 U.S. at 560. The

party filing the action or removing it to federal court bears the burden of establishing the constitutional elements of standing.   *Lujan*, at 561; *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (citing *Simon,* at 41-42).

Additionally, there are prudential requirements for standing.  The prudential requirements are judge-made principles that preclude jurisdiction over some types of cases in which Article III standing exists.  Schswarzer, et al., Federal Civil Procedure Before Trial 2E-3 (2013).  These include prohibitions on third-party standing, *See Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 14 (2004), and "generalized" injuries, *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474-475 (1982), and a requirement that the Plaintiff's claim falls within a "zone of interest" sought to be protected by the statute in question, *See Bond v. United States*, 131 S.Ct. 2355, 2366-67 (2011).


**IV. DISCUSSION**

Defendants' motion for judgment on the pleadings is built upon the argument that Plaintiff has no standing to sue in Federal Court resulting in a lack of subject matter jurisdiction.  Defendants do not allege that Plaintiff fails to meet the constitutional requirements of standing, or the additional limitations judicial opinions have placed upon standing.  Rather, Defendants contend there are further requisite elements of standing based upon statutory and contractual law that Plaintiff fails to meet in the instant case.  Defendants conclude, therefore, that Plaintiff lacks standing to sue.

***A.  Plaintiff's claims for violation of Title 47 U.S.C. § 605 and § 553 -*** Plaintiff alleges causes of action for violation of Title 47 U.S.C. § 605 and § 553.  Plaintiff alleges that, pursuant to contract with the *Program* licensor, J & J was granted exclusive nationwide commercial

distribution rights to the *Program* that allowed them to grant subsequent sublicensing rights to broadcast the *Program* to commercial entities throughout North America.  J & J alleges that without authorization, Defendants "did unlawfully intercept, receive, publish, divulge, display and/or exhibit the *Program* at the time of its transmission at their commercial establishment," in violation of 47 U.S.C. § 605 and § 553.

In its complaint, J & J seeks relief under 47 U.S.C. § 605 and 47 U.S.C. § 553. Both statutes prohibit the unauthorized interception and exhibition of communications. The common elements of both statutes require: 1) The plaintiff must show that the defendants intercepted a broadcast, 2) The plaintiff must show defendants were not authorized to intercept the broadcast, and 3) Defendants showed this broadcast to others. 47 U.S.C. § 605(a); 47 U.S.C. § 553(a)(1). The primary distinction between the sections regards the manner in which a defendant intercepts a signal.  Section 605 is violated upon interception of a signal transmitted via satellite, section 553 is violated upon interception of a signal transmitted via cable system.  A plaintiff can prevail upon a cause of action for *either* section 605 *or* 553.   "Piracy of television programs, such as that which occurred here, either falls within the purview of § 553 or § 605, but not both. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3rd Cir. 2001)." *J & J Sports Productions, Inc., v. Gencarelli*, 2011 WL 1253886, at *2 (D.N.J. Mar. 28, 2011).

Defendants argue there are two reasons that J & J has no standing to sue in the instant case. First, Defendants contend J & J lacks standing to sue because it is not the "exclusive licensee."   Defendants rely on a myriad of common law cases to support this argument, interpreting them to form the following synthesized rule applicable to television signal piracy law, and state in their motion: "… plaintiff (licensee) must have the sole discretion to sue, the original licensor cannot have retained rights to determine if a lawsuit can be brought or to license

other parties, the original licensor cannot retain a financial interest in the litigation or the ability to direct the litigation decisions, the licensee must have an exclusive license not just in name but in substance, and all rights must be transferred to the licensee in order for the licensee to have the power to sue."

Second, Defendants contend Plaintiff lacks standing to sue because J & J stands in breach of its contractual obligations with the licensor.  Defendants assert that, under common law, where contracts grant proprietary rights and contain provisions that limit the right to sue, standing does not lie where breach of contract has occurred.  Defendants contend that Plaintiff had the affirmative duty under Fed. R. Civ. P. 26(a)(1)(A) to disclose evidence proving contractual compliance with its licensor in order to sufficiently establish its standing to sue in the instant case.

***i. Plaintiff's constitutional standing to sue is sufficiently established*** -   Plaintiff's complaint has sufficiently alleged a "concrete and particularized injury in fact," asserting a precise date, time, and location of a specific unlawful signal interception by Defendants.  Further, the complaint sufficiently demonstrates that Plaintiff's injury is "fairly traceable to the challenged action of the defendant" by alleging the *Program* was broadcast at Defendants' commercial establishment without Defendants contractually obtaining the rights to do so.  The possibility of "redress by a favorable judicial decision" is likewise established here because an award of monetary damages by the court would serve to compensate Plaintiff for alleged injuries.  Plaintiff's complaint meets the three requisite elements of constitutional standing.

***ii.  Plaintiff's statutory standing to sue is sufficiently established -*** 47 U.S.C. § 605 provides clear language regarding a plaintiff's standing to sue:  "Any person aggrieved by any violation of

subsection (a) of this section… may bring a civil action in a United States district court or in any other court of competent jurisdiction."  47 U.S.C. § 605(e)(3)(A).  Section 553 is equally clear: "Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction."  47 U.S.C. § 553(c)(1).  The term "person aggrieved" was not defined when § 605(e)(3)(A) was originally enacted.  However, section 605 of the Communications Act was further amended by the Satellite Home Viewer Act of 1988, Pub.L. No. 100-667, § 205, 102 Stat. 3959-60.  That Act amended § 605 by adding the following definition of a "person aggrieved" to § 605(d):  "the term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming...."  47 U.S.C. § 605(d)(6).

In *National Satellite Sports, Inc. v. Eliadis, Inc*., the Court of Appeals agreed with the District Court below that the use of the word "include" in the statutory phrase "any person aggrieved shall include any person ..." does not mean that only persons who meet that definition have standing to sue.  *National Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 912 (6th Cir. 2001*); DIRECTTV, Inc. v. Budden,* 420 F.3d 521, 528 (5th Cir. 2001); *DIRECTV, Inc. v. Boonstra*, 302 F.Supp.2d 822, 829 (E.D. Mich. 2004)   The legislative history of section 605(d) supports the courts' interpretations.  In the House Report accompanying the 1988 amendment to § 605 that added the definition of "person aggrieved" under § 605(d)(6), the purpose of the amendment was explained as follows:

> Section 5 of [the Satellite Home Viewer Act of 1988] amends [§ 605] of the Communications Act pertaining to the piracy of satellite cable programming. The Committee's amendment is intended to deter piracy practices by (1) stiffening applicable civil and criminal penalties, (2) *expanding standing to sue,* and (3)

> making the manufacture, sale, modification ... of devices or equipment with knowledge that its primary purpose is to assist in unauthorized decryption of satellite cable programming expressly actionable as a criminal act.
> H.R.Rep. No. 100-877(II), at 28, *reprinted in* 1988 U.S.C.C.A.N. 5638, 5657 (emphasis added).

Limiting the availability of civil actions to those persons who "have the sole discretion to sue or license other parties, retain all financial interest in any potential litigation, enjoy unconditional ability to direct all future litigation, have an exclusive license not just in name but also in substance, and possess all rights as transferred from the original licensor," as Defendants would like the court to find, is inconsistent with the intent of Congress as expressed in the Cable Communications Policy Act of 1984 and the Satellite Home Viewer Act in 1988.  Both acts were intended to expand the scope of protection provided by the Communications Act, not limit it. *National Satellite Sports, Inc.*, 253 F.3d 900, at 912.

It is unnecessary to interpret or construe the standing language within sections 605 or 553.  The language is plain and the intent of Congress is clear.  Defendants' claim that standing to sue under television signal piracy laws should be further limited beyond constitutional and prudential requirements is at odds with the legislative intent behind the amendment to section 605.  To narrow the reach of the Communications Act is to contravene long-standing statutory language, and the Court is unwilling to do so.  If the legislature wants to further limit the language "any person aggrieved" to included Defendants' proposed elements derived from a myriad of common law cases, it may do so.

Furthermore, "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly-beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested." *Federal Election Commmission v. Akins,* 524 U.S. 11, 19 (1998); *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.,* 2009 WL 1886124, at

*8. As a result, courts have found that distributors of satellite programming have proprietary rights to communications they distribute and therefore have standing to sue when others injure those rights by violating § 605. *See Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc.,* 975 F.Supp. 746, 753 (E.D. Penn. 1997) (finding plaintiff constituted "aggrieved person for purposes of [§ ] 605, because it has a propriet[ar]y right to the distribution of ... broadcast" from original broadcaster); *see also Garden City Boxing Club, Inc. v. Hernandez,* 2008 WL 4974583, at *3 (S.D.N.Y. Nov. 24, 2008) (finding that distributor of televised boxing match to commercial entities had proprietary interest in communication to qualify as person aggrieved and therefore had standing to sue).

***iii.  Lack of standing to sue based on failure to prove contractual fulfillment* –** Plaintiff's standing to sue under sections 605 and 553 has been sufficiently established, as stated above. Defendants' second argument based upon breach of contract with the licensor in unsupported. The court finds Defendants have not sufficiently explained or provided support as to why Plaintiff's potential breach of contract with the Licensor makes Plaintiff *not* an aggrieved party lacking standing.

Plaintiff has met the burden of establishing the constitutional and prudential elements of standing, and therefore, Defendants' motion for judgment on the pleadings is DENIED without leave to amend.

***B.  Plaintiff's claim for conversion-*** Plaintiff further alleges a state law cause of action for common law conversion, contending that Defendants "tortuously obtained possession of the *Program* and wrongfully converted same for their own use and benefit." Defendants make no specific argument in his motion for judgment on the pleadings regarding the conversion claim. A conversion requires "ownership or right to possession of property, wrongful disposition of the

property right and damages." *J & J Sports Productions, Inc. v. Concepcion*, 2011 WL 2220101,

at *2 (N.D. Cal. June 7, 2011) (quoting *G.S. Rassmussen & Associates, Inc. v. Kalitta Flying*

*Service, Inc.,* 958 F.2d 896, 906 (9th Cir. 1992).  Accepting as true all material allegations in the

complaint, and construing those allegations in a light most favorable to Plaintiff, the complaint

supports all three elements required of a claim for conversion:  1) Plaintiff purchased rights to

sublicense the program at issue,  2)  Defendants did not enter into an agreement to pay a fee to

Plaintiff in exchange for the right to exhibit the *Program* in its commercial establishment, and 3)

Plaintiff has incurred damages equal to the amount Defendants should have paid for the

contractual right to show the *Program*.  As such, Plaintiff does not lack standing to bring its

claim for conversion, and Defendants' motion for judgment on the pleadings is DENIED without

leave to amend.

***C.  Plaintiff's claim for violation of California Business and Professions Code § 17200***  -

Plaintiff further alleges a cause of action for violation of California Business and Professions

Code § 17200, contending that Defendants' unauthorized interception and exhibition of the

*Program* constituted "unlawful…fraudulent…unfair, and deceptive trade practices…"

Defendants make no specific argument in their motion for judgment on the pleadings regarding

the section 17200 claim.

Cal. Bus. & Prof. Code § 17200 states:

As used in this chapter, unfair competition shall mean and include any unlawful,
unfair or fraudulent business act or practice and unfair, deceptive, untrue or
misleading advertising and any act prohibited by Chapter 1 (commencing with
Section 17500) of Part 3 of Division 7 of the Business and Professions Code.  Cal.
Bus. & Prof. Code § 17200.

Cal. Bus. & Prof. Code § 17204 provides the elements necessary for standing to sue for

violation of section 17200:

> Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by... a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.  Cal. Bus. & Prof. Code § 17204.

As discussed above, Plaintiff alleges in its complaint that as a result of Defendants' unlicensed exhibition and display of the *Program*, a particularized and concrete injury was suffered.  Further, the proximate result of the conduct "permanently deprived [Plaintiff] of the patronage of current, previous and potential customers of the sports and entertainment programming it licenses commercially to the hospitality industry, all to its severe financial injury and loss…"  This is undisputed by Defendants in their motion.  Because Plaintiff has sufficiently established standing under Cal. Bus. & Prof. Code by adequately alleging an "injury in fact" and a "loss of money or property as a result of the unfair competition," Defendants' motion for judgment on the pleadings is DENIED without leave to amend.

## V. DISPOSITION

For reasons discussed above, the motion for judgment on the pleadings shall be DENIED without leave to amend.

IT IS SO ORDERED.

Dated:   November 15, 2013

_____

SENIOR  DISTRICT  JUDGE

[i] "*Program*" refers to the closed-circuit nationwide television broadcast of *"Good v. Evil": Miguel Angel Cotto v. Antonio Margaritio, WBA Super World Light Middleweight Championship Fight Program*, including all "under-card bouts" and fight commentary comprised within the telecast.